CARLOS D. SHELDEN AND GEORGE C. SHELDEN, EXECUTORS OF THE LAST WILL AND TESTAMENT OF RANSOM SHELDEN, DECEASED, AND ANNA SMITH AND LYDIA R. HINSDALE, EXECUTRICES OF THE LAST WILL AND TESTAMENT OF COLUMBUS P. DOUGLASS, DECEASED, v. THE ESTATE OF EBENEZER WARNER, DECEASED.

*Official bond—Mortgage to secure performance of its conditions and to indemnify sureties—Liability of mortgagor, thereunder, and of his estate for deficiency on foreclosure sale—Administrator not bound to contest just claims, on revivor of suit against estate, but may consent to judgment.*

1. A government officer executed a mortgage, conditioned for the payment of all sums of money for which the sureties on his official bond were liable by reason of their suretyship, and also to indemnify them from loss arising through any default on his part, which default occurred and the mortgagees were compelled to pay his deficit. Thereupon they filed a bill to foreclose their mortgage, which was taken as confessed by the mortgagor, after personal service of sub-

poena and the usual decree, with personal clause, entered in the case. This decree was granted after his death. The suit was afterwards revived against his estate, and a decree, in the usual form, *consented* to by the administrator, which declared that for any deficiency, the estate should be liable in the due course of administration, which decree was never appealed from by any one. A sale was had, and the deficiency certified to the court, and allowed by the commissioners on claims against said estate, but rejected on appeal, by the circuit court.

*Held,* that the mortgagor's liability was under his bond, which was his personal obligation to his sureties, as well as to the government, and that they could sue on the bond for all that they were obliged to pay for him.

*Held,* further, that as the mortgagor was liable to a *personal* decree in his life-time, in said foreclosure suit, his estate was liable for any deficiency arising on the foreclosure sale, and that there is no rule requiring an administrator, when brought in on revivor of such a suit against the estate, to defend against a just claim, nor is it true that he cannot bind the estate by consenting to a judgment in such a case.

2. Where a mortgage is collateral to the actual personal obligation of the mortgagor, enforceable at law: no matter in what shape that obligation exists, it may be enforced in foreclosure proceedings, under section 6702, How. Stat., the express purpose of which is to save the necessity of suing, at law, for any part of the same debt.

3. It is only where a personal decree is sought against sureties, or other persons besides the mortgagor, that such decree must be based on some written obligation (section 6704, How. Stat.), but there is no such condition as to the mortgagor himself.

Error to Chippewa. (Steere, J.) Argued October 8, 1885. Decided February 3, 1886.

The facts and nature of the case are fully stated in the opinions.

*Chandler, Grant & Gray* and *Ashley Pond,* for complainants.

A personal decree against defendant was neither erroneous nor void. Where the proceeds of a mortgage, given to indemnify sureties upon a bond, do not reimburse them for their expenditures, they may recover the deficiency at law or under the statute: How. Stat. § 6702. From the relation of principal and sureties upon the bond, the law implied an undertaking on Warner's part to repay the sureties, whatever

they expended on his behalf, and for a breach of this agreement, an action at law would lie, which would be the only security of the sureties in the absence of a mortgage. Such breach occurred, and the sale of the mortgaged premises failed to satisfy the sureties' claim, and the balance was recoverable at law, and under the section cited. There is no need here of an implied covenant, and section 5656, How. Stat. does not apply.

Where persons had indorsed firm paper, for accommodation, and taken an indemnity mortgage after the firm's insolvency, it was held that if the mortgaged lands did not repay them, they became general creditors of the firm for the deficit: *Uhler v. Semple*, 20 N. J. Eq. 288; the question is, whether this mortgage is collateral to some other agreement, or is the *only* agreement involved. If collateral, the mortgagor is personally liable, otherwise not. This mortgage is expressly collateral to the pre-existing, contingent obligation raised by the bond, and not a substitute for such obligation, hence the mortgagor was personally liable for the deficiency.

The intestate consented to the decree, and his heirs cannot now contest it. Warner's personal liability to complainants was alleged in their bill, and that they held the mortgage as security for this debt, and it prayed for a personal decree. Had he been alive when the decree was actually entered, under the circumstances he would be held to have consented to such personal decree, even if it would be unwarranted without such consent. The personal service of subpœna and order *pro confesso*, were as effective as a formal consent: *Smith v. Smith*, 46 Mich. 301. Warner died in 1879, but the personal decree was made as of the August term, 1878, was actually entered in 1880, but was by the order of the court to stand as of the August term, 1878. This is proper practice: *Gundermand v. Gunnison*, 39 Mich. 313; the decree bound the administrator as soon as the cause was revived against him. The right to same was established, and it needed only that he be appointed, and brought into the suit, to make it operative against the estate. The stipulation of the administrator for a decree bound the estate. It is well settled that an administrator may settle and compromise claims, and confess judgments in suits brought against him, and that creditors with whom he thus settles will be entitled to the benefit of his acts, if they deal in good faith: 2 Williams' Exrs. 88; *Tolputt v. Wells*, 1 M. & S. 395; *Prince v. Nicholson*, 5 Taunt. 333; *Lyttleton v. Cross*, 3 B. & C. 317; *Ruggles v. Sherman*, 14 John. 446; *Lawrence v.*

*Bush*, 3 Wend. 306; *Pinney v. Johnson*, 8 Wend. 500; *Dickey v. Trainer*, 43 Penn. St. 509.

*Brennan & Donnelly* and *F. A. Baker*, for defendant.

Prior to the enactment of How. Stat. § 6702, the chancery court had no power to render a personal decree in a foreclosure case: *Johnson v. Shepard*, 35 Mich. 122; and in any event, in order to warrant such a decree, the record must disclose such a state of facts as will bring the case within the provisions of the statute, and such decree, and an execution to enforce it, can only be granted after a deficiency is reported, and upon notice to the party against whom it is claimed. Same case: *Mickle v. Maxfield*, 42 Mich. 304; *Brown v. Thompson*, 29 Mich. 72; *Howe v. Lemon*, 37 Mich. 164. Only such a decree as the bill warrants, can be entered in a case where the bill is taken as confessed, and a mortgage or other security set forth and referred to in a bill of complaint, and made the ground for relief, is a necessary part of the record. Under this rule, the record in this case affirmatively shows, that no such state of facts existed as would warrant the entry of a personal decree, and the defendant, in the original suit, had a right to suppose that no decree would be made contrary to the terms of the mortgage: *Mickle v. Maxfield*, 42 Mich. 304. It is therefore submitted:

(*a*) That the court had no jurisdiction in this case to enter a personal decree, and (*b*) that the decree, if a proper one, having been taken *pro confesso*, cannot be considered final and conclusive, so as to prevent the estate from inquiry into it in this proceeding.

The consent of the administrator, was for a decree for the amount due on the mortgage, and he had no power to create a personal liability, against the estate, where none formerly existed.

CAMPBELL, C. J.  Plaintiffs having established a claim against the estate of Ebenezer Warner, before the commissioners, it was rejected on appeal before the circuit court for Chippewa county, and that decision comes before us on error.

The claim is for a balance remaining due after a sale under a mortgage decree. The foreclosure suit was brought upon a mortgage given by Warner, to Ransom Shelden and Columbus C. Douglass, who were his bondsmen as receiver of the United States Land-Office. The mortgage was conditioned

that Warner should "pay, or cause to be paid, all such sums of money, dues, or demands for which said party of the second part are holden and liable to and for the said party of the first part, by being security for said party of the first part upon an official bond, as receiver of the United States Land-Office at Marquette, in this State, and shall save and keep harmless the said Douglass and Shelden from all costs, expenses, charges, or loss arising therefrom, then these presents," etc., "shall cease," etc.   This bond was executed by Warner and by his sureties.   He made default, and Douglass and Shelden, having been compelled by suit in favor of the United States to pay his deficit, filed their bill to foreclose.   Warner and his grantees of the mortgaged premises were made defendants.   He was served personally and defaulted, and the usual decree was made against him.   A decree, with personal clause, was made against him, which seems to have been after his death, but a dismissal was had as to the other defendants.   On appeal, to this Court, the decree dismissing the bill as to them was reversed, and a decree ordered against them: 45 Mich. 638.   In August, 1881, the case was revived against Warner's estate, and a decree, in the usual form, was consented to by the administrator, and a sale had, and surplus found remaining due after sale, which is the claim now in controversy.   The decree, which declared that for any deficiency the estate should be liable in the due course of administration, was never appealed from by any one.

The circuit judge seems to have held, that the claim of plaintiffs rested on the personal clause in the decree, and that this clause was void for want of jurisdiction; and this want of jurisdiction seems to be based on the want of any personal obligation accompanying the mortgage, in the absence of which he holds that the action of the administrator could not bind the estate for any deficiency.

In my opinion, the circuit judge acted in entire misapprehension of the statutes.   It is very true that where a mortgage is the only claim existing, a covenant to pay is not implied; but if a mortgage is collateral to any actual per-

sonal obligation which could be enforced at law, no matter in what shape that obligation exists, it may be enforced in the foreclosure proceedings. The express purpose of the statute is to save the necessity of suing at law for any part of the same debt. By section 6702, of Howell's Statutes, it is declared that the court shall have power to make a personal decree for "any balance of the mortgage debt that may remain unsatisfied after a sale of the mortgaged premises, in the cases in which such balance is recoverable at law." It is only where a personal decree is sought against sureties, or other persons besides the mortgagor, that a decree against such third persons must be based on some written obligation. (Section 6704.) There is no such condition as to the mortgagor himself.

It would make no difference, however, in this case, because the mortgage here is to secure the payment of Warner's obligation under the bond, as well as to indemnify his sureties, and his liability is under the bond itself, which is his personal obligation to them as well as to the government, and they could sue on the bond for all that they were obliged to pay for him. But that he was liable, at law, for the obligation secured by the mortgage, there can be no possible doubt.

If Warner, had he lived, would have been liable to a personal decree, then there can be no doubt that his estate is liable for this deficiency. The bill was filed to enforce the personal obligation, as well as the security on the land. The decree of sale could not be made until the amount of the debt was determined. That determination must fix the amount of the debt, until reduced by the sale, and must stand as a judgment of the sum due, subject to such reduction: *Haldane v. Sweet*, 58 Mich. 429.

Warner's default made him, if he had lived, subject to a decree both personal and for foreclosure. Under the statutes, both at law and in equity, the personal representative is the only person to be brought in as interested in a personal claim against the estate, and there is no rule which requires him to defend against a just claim, even if he could defend a claim that has already been taken as confessed against his

decedent. The statute (section 6659) expressly provides that if the original defendant has not answered, the court may order a decree *pro confesso*, or may compel an answer by attachment. But where an answer under oath is waived, as here, a *pro confesso* is the only decree in the absence of an answer. The same rule applies at law, and if the representative makes default, a personal judgment is rendered against the estate, and is evidence of a debt established, to be paid in due course of administration. Section 7396.

It is not true, therefore, that an administrator is bound to defend, or cannot bind the estate by consenting to judgment when the suit is already pending in a court of justice.

I can see no reason why this claim should be rejected, and think judgment should go for plaintiffs.

CHAMPLIN and SHERWOOD, JJ., concurred.

MORSE, J. The plaintiffs presented the following claim against the estate of Ebenezer Warner, deceased, before the commissioners, to examine, audit, and allow claims against said estate, which claim the said commissioners allowed at the sum of $12,793.59 :

"*Estate of Ebenezer Warner, deceased, to Carlos D. Shelden and George C. Shelden, executors of the last will and testament of Ransom Shelden, deceased, and Anna Smith and Lydia R. Hinsdale, executrices of the last will and testament of Columbus C. Douglass, deceased.*

"To amount of deficiency reported due from said estate, by E. J. Penny, circuit court commissioner for Chippewa County, in his report of sale in the suit of the parties above named v. Joseph Ripley, administrator of the estate of Ebenezer Warner, deceased, Thomas Ryan, Louis P. Trempe, William J. Newcomb and Henry P. Smith:

Nov. 10, 1882, deficiency, . . . . . . $12,501 88
Interest to date, at 7 per cent., . . . . .     291 71
                                            _____
                                            $12,793 59" .

The administrator refusing to appeal, the heirs of said Warner, under the statute in such case made and provided, appealed to the circuit court for the county of Chippewa. On the trial, in the circuit court, the judge made a written

finding, and disallowed and dismissed said claim. The plaintiffs allege error, and ask that the claim be allowed, and the finding of the commissioners sustained.

It appears from the findings of the circuit judge, that plaintiffs rely solely and entirely upon proceedings in a chancery suit, commenced in August, 1876, in Chippewa county, wherein the plaintiffs were complainants, and the deceased, Ebenezer Warner, and others were defendants; that they base their right to recover against his estate, upon the personal clause in a decree for the foreclosure of a mortgage, in said chancery suit against the estate of said Warner, rendered after his death, to wit, September 22, 1882; and also upon the report of the circuit court commissioner after sale upon said decree, showing a deficiency.

The material facts found by the circuit judge are these:

"(1) The bill of complaint in said chancery suit was taken as confessed, against Warner, in July, 1877, after personal service upon him of process.

"(2) Said bill alleged that Warner was liable to pay, and prayed that he be decreed to pay, to the complainants, any balance that might remain due to them after sale of the mortgaged premises; but did not allege that the mortgage contained any express covenant for the payment, by the mortgagor, of the sum intended to be secured by said mortgage, nor that any bond, note, or other separate instrument to secure such payment, had been given by the mortgagor.

"(3) Warner never appeared in the cause, and died January 5, 1879; that he resided in Sault Ste. Marie from 1861 until the fall of 1863, and from the fall of 1865 to fall of 1871, at which time he went to Port Austin, Ontario, from whence he visited Sault Ste. Marie several times, returning there in 1874, and living there continuously until his death.

"(4) Warner was receiver of the United States Land-Office at Marquette, and, as such receiver, gave an official bond, with said Ransom Shelden, and Columbus C. Douglass, and one William H. Stevens as sureties. Said bond was dated April, 1861. To secure these bondsmen against their contingent liability upon said bond, Warner, on the twelfth day of April, 1861, executed and acknowledged the mortgage heretofore referred to, conditioned that he should pay to said Shelden and Douglass all sums of money that they might pay, or become liable to pay, on account of signing

said bond, and to save and keep them harmless from all costs and expenses arising therefrom. There was no note or bond accompanying said mortgage.

"(5) Warner became a defaulter, and, June 19, 1863, the United States recovered judgment against said Warner, Shelden, and Douglass for the sum of $50,000 (the penal sum named in said bond), to be discharged upon the payment of $8,970 damages, and $285 costs. Shelden and Douglass paid, at various times before the mortgage foreclosure, in all $7,290 upon said judgment.

"(6) August 31, 1878, an order was made in the foreclosure suit by complainants, and the defendants, who had appeared, submitting the case *pro forma*, and providing that it be argued at chambers, in the city of Detroit, and that decree might be filed in vacation. No one appeared or acted for Warner, who had before this been defaulted for not pleading.

"(7) March 27, 1880, a decree was entered, dismissing the bill as against all the defendants save Warner, and referring the matter to a commissioner to compute the amount due against him. Commissioner reported, finding the amount to be $14,222.08.

"(8) Complainants appealed to the Supreme Court, and the decree dismissing the bill against the other defendants was reversed, and the cause remanded to the circuit for further proceedings.

"(9) August 1, 1881, one Ripley was appointed administrator of the estate of Warner, and on the twenty-third of the same month an order was made, reviving the chancery suit against said Ripley as Warner's administrator. August 29, same year, Ripley consented in writing to a decree in the cause, and September 27, 1882, the decree of sale was entered.

"(10) The mortgaged premises were sold, November 10, 1882, and the deficiency reported on such sale was $12,-501.88, which report was duly confirmed by the entry of the usual order in such cases.

"(11) On the trial of the cause, on this appeal in the circuit court, no evidence of indebtedness was given, except the record of this decree of September 27, 1882, and the records, files, and exhibits in said chancery suit in support of the same.

"(12) The mortgage introduced as a part of said files purported to be in consideration of $6,000. There was no express covenant for the payment of any sum of money

therein, and the only reference to any other instrument, or paper, is contained in the condition of said mortgage, which is as follows: 'Provided, always, and these presents are upon this express condition, that if the said party of the first part shall and do well and truly pay, or cause to be paid, all such sums of money, dues, or demands for which said party of the second part are holden and liable to and for the said party of the first part, by being security for said party of the first part upon an official bond, as receiver of the United States Land-Office at Marquette, in this State, and shall save and keep harmless the said Douglass and Shelden from all costs, expenses, charges, or loss arising therefrom, then these presents, and all the provisions thereof, shall cease and shall be null and void.' "

I think the judgment of the circuit court was right, and in accordance with law. There was no ground for any personal decree against Warner or his estate. In the absence of any covenant, in the mortgage, for the payment of any indebtedness, no covenant can be implied. No separate instrument being given to secure such payment, the remedy of plaintiffs was confined, as far as the mortgage was concerned, to the sale of the premises described therein under the decree. How. Stat. § 5656.

But, conceding that the reference to the receiver's bond in the mortgage was sufficient to authorize the rendering of a personal decree against Warner, yet, when Warner died, the suit against him was dead, for the time being, and no legal steps could be taken therein until the same was properly revived against his legal representatives. Warner died, January 5, 1879. The decree relied on to support this claim against his estate was not taken until September 27, 1882, at which time, it expressly appears of record, that it was taken with the consent of the administrator, " on his own behalf."

I cannot hold to the doctrine that an administrator has any right to do this. I am not prepared to establish the proposition that an administrator can consent to a decree in effect taking over $12,000 out of the estate of the deceased, and from his heirs, perhaps all infants, and putting it in the pockets of the plaintiffs.

It is urged that there is no evidence of collusion between

the plaintiffs and the administrator. But is it to be declared that the heirs, to save what is left to them by their father, must show affirmatively that the administrator was bought, or lose it? The doctrine is too monstrous to be adopted for a moment. It has been repeatedly held in this Court, and it is as beneficient, as sound in law, that an administrator cannot admit, or allow, a claim against the estate of a deceased person, but that all claims must be proven either before the judge of probate, or commissioners appointed for that purpose. The executor or administrator is the representative of the estate, not to admit away rights or confess judgment, but to defend, preserve, and protect the interests of the heirs: *Fish v. Morse*, 8 Mich. 34; *Clark v. Davis*, 32 Mich. 154.

Nor can he stipulate away rights: *Barry v. Davis*, 33 Mich. 515. If he refuses to appeal from the allowance of a claim, the statute wisely provides that the heirs or even creditors may do so. It is not the policy of the law that he shall be given any authority, whatever, to admit or confess the liability or indebtedness of the deceased.

And yet, it would be contended here, that, without the power before commissioners, or in the probate court, to add one dollar to the liabilities of the deceased, he can indirectly, by stipulation in an equity proceeding, fasten an indebtedness of thousands of dollars upon the estate, and then have the result of his confession, obtained without the knowledge or consent of the heirs, brought in before the commissioners, and made the sole basis of a recovery. If allowed to be so used, this report of the commissioners, under the former decisions of this Court, stands as a final judgment, to be attacked only in reference to such matters as go to its payment or discharge. No man, it seems to me, would care to leave the interests of his infant children in the hands of even his best friend, if this power be given his executor to give away their substance under the sanction of law.

The action of the circuit court in disallowing and dismissing plaintiff's claim, with costs to the heirs, should be affirmed, with the costs of this Court.